OPINION
Kenneth Christman is appealing from his convictions of guilty of obstructing official business and resisting arrest, violations of R.C.2921.31(A) and R.C. 2921.33(A), after a bench trial.
The appellee, State of Ohio, did not file a brief in this appeal. App.R. 18(C) provides that if the appellee has failed to file a brief, this court, in determining the appeal, "may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action." We, therefore, set forth the facts of this case as presented to this court in the appellant's brief, as follows:
 "Officer Haines of the Trotwood Police Department was on patrol on May 12, 2001 when at Twin Creek Plat he noticed a white Oldsmobile leaving the plat on Little Richmond Road. (Tr. 7). A short time later, the officer saw the same car parked in a driveway where he knew an elderly lady lived and at which he had never seen the car before. (Tr. 8). As the officer went down the road he noticed the white Oldsmobile begin to back out onto the roadway and then pull back into the driveway. (Tr. 8-9). The officer continued east and then turned around, noticing as he did so that the car had backed out of the driveway onto the roadway without turning its lights on. (Tr. 9). The officer notices, from about the length of a city block, the car without signaling turn into another driveway, where it is pretty dark. (Tr. 10, 15). Officer Haines never activated his emergency lights or siren, or gave any indication he desired the Oldsmobile to stop. (Tr. 15, 18-19).
 "Officer Haines followed the car into the driveway but didn't notice that the driver had exited the car. (Tr. 17). The officer called for assistance and also for the K-Nine unit. (Tr. 18). It took several minutes for back-up and the dog unit to arrive. (Tr. 18). Officer Haines still had not indicated by activating his siren, emergency lights or verbally that he was a police officer. He never yelled "stop I'm the police" or anything else indicating who he was. (Tr. 19). Officer Adkins arrives with his dog and starts tracking. (Tr. 19). Adkins follows the dog and Officer Haines follows Adkins. The area is dark and the officers both have flashlights to help them see. Officer Adkins' light is attached to his gun. (Tr. 20, 33). Neither officer ever called out for anybody to identify themselves, nor did they call out saying they are the police. The officers never said "come out we're police officers." (Tr. 26).
 "The dog, a seventy pound Belgian Malamute, tracked to some underbrush where he found Mr. Christman. (Tr. 26). The dog started nipping at Mr. Christman, who started to yell and kick at the dog. (Tr. 26, 34). Officer Adkins, by this time had turned off his flashlight so he would not be seen. (Tr. 34-35). The dog bit Mr. Christman's ankle and tore his clothes. (Tr. 35). The officer started yelling for Mr. Christman to place his hands on his head but still had not identified himself as a police officer. (Tr. 35).
 "Officer Haines, who was about six seconds behind Officer Adkins, observed Mr. Christman arguing with Adkins and ordered him to the ground. (Tr. 11, 20). Mr. Christman is told a second time to get to the ground and then Officer Haines, all six foot six and two hundred and sixty-five pounds of him, grabbed Mr. Christman's right arm, pulled him to the ground, and handcuffed him. (Tr. 12, 22). Mr. Christman was never told that he was under arrest or, for that matter, what he was under arrest for. (Tr. 22)."
Further elucidation about Mr. Christman's actions that night are set forth in his own testimony at the hearing, as follows:
 "Q. Mr. Christman, on the evening of May the 12th, or I guess it would be the early hours of the morning of May 12th, did you have occasion to be in the area of Little Richmond and the Twin Creek plat area?
"A. Yes, ma'am.
 "Q. Okay. What reason did you have for being in that area, sir?
 "A. Actually I had come down Union Road running from I dropped a girl off in the plat. And when I dropped this girl off this guy came out.
 "He was a little irate and drunk. And he had a gun or something in his hand. He come up after me. And I leaped in the car to pull back out and he come chasing down the road.
 "And I flew into the plat. On my way back out of the plat I saw Mr. Police Officer. Okay? Well
 "Q. Let he [sic] stop you there. Is this guy chasing you on foot?
"A. No, in a car.
"Q. What kind of car?
"A. A light blue car." (Tr. 41-42).
"* * *
"Q. Okay. And then what did you do?
 "A. Well a car goes by. I duck down, but I see the lights go by. Okay. I never seen the car. Okay. So I wait about a minute. I start to back back out.
 "And all the sudden I see these lights come flying as I pulled back on the road I see these lights come flying back down the road. So I pulled in another driveway and I shut off my lights real quick.
 "I shut off the car and I run straight to the edge of the woods. Right there's the fence line. Right there at the backside of the thing and I just sit there.
 "I was hoping maybe he thought I went into a house or I wasn't around where he could follow me in my car.
"Q. Who is he?
"A. I don't know the guy.
"Q. But you believed it was the guy in the blue car?
"A. Yes.
"Q. So did you stay along that fence line you say?
 "A. There's a little like a big pine tree. I sit right up underneath it, right on the other side of the fence line of the (inaudible).
 "Q. Okay. At any time did you hear anybody say stop, police?
 "A. No. There was never I was never pulled over. I never seen lights.
 "Q. You never saw any emergency lights indicating you should stop and wait for police?
"A. No.
"Q. Okay. So you're hiding. What can you see?
 "A. Nothing. I see headlights on my car. I see a set of headlights for somebody that pulled in behind my car. That's all you could see
"Q. Okay.
 "A. Was just headlights. I didn't know if it was that man. I didn't know they never said nothing.
"Q. And there were no flashing emergency lights?
"A. No. No.
"Q. Okay. How long did you wait there?
"A. I sat there for almost at least ten minutes.
"Q. Okay. And what happened next?
 "A. From that point two black objects come towards me from okay. If the house was here, I'm sitting at the fence line sideways. Two people come from this direction.
"Q. Two people?
 "A. Two people come from that direction. And the next thing I know I hear this get him, boy, get him. From that point of view I yelled out do not let that dog eat on me.
"Q. Okay." (Tr. 43-45).
The appellant presents the following two assignments of error:
 "1. THE TRIAL COURT ERRED BY OVERRULING DEFENDANT'S MOTION FOR ACQUITTAL AT THE CLOSE OF THE STATE'S CASE.
 "2. THE TRIAL COURT ERRED BY CONVICTING MR. CHRISTMAN WHEN THE CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
We find that the first assignment of error has merit. We will sustain it and, therefore, we find that the second assignment of error is moot.
A charge of obstructing official business is set forth in the statute:
 "(A) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."
As the appellant points out in its brief, the charge of obstructing official business requires an affirmative act done purposely to hinder the police from performing their duties, and it is not merely a failure to respond to an officer's request. Hamilton v. Hamm (1986),33 Ohio App.3d 175; State v. McCrone (1989), 63 Ohio App.3d 831, 834. The facts reveal absolutely no basis for the charge of obstructing official business. In fact, we wonder why the State even charged the defendant, much less prosecuted him.
The crime of resisting arrest requires proof of a lawful arrest. The statute specifies that "no person, recklessly or by force, shall resist or interfere with a lawful arrest of one person or another." R.C.2921.33(A). There is absolutely no evidence that the appellant was engaging in resisting an arrest. He did not even know they were police officers, and the most he could be charged with was resisting the attack by a dog. There is no law against that.
We find both charges against the appellant to be absolutely without merit of any kind whatsoever. The first assignment of error is sustained, and the second assignment of error is held to be moot.
The judgment is reversed, and the appellant is discharged.
WOLFF, P.J. and FAIN, J., concur.